**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **CHRISTOPHER PRYOR SMITHSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:25-cv-01171** |
| **v.** ) | **Judge Frensley** |
| ) | |
| **FRANK BISIGNANO,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Plaintiff has filed an accompanying Memorandum. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16. Plaintiff has filed a Reply. Docket No. 17.

For the reasons stated below, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 12) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

## <u>I. INTRODUCTION</u>

Plaintiff filed his applications for DIB and SSI on July 27, 2023, and January 2, 2024,

1

respectively, alleging that he had been disabled since December 31, 2020, due to depression, anxiety, panic attacks, PTSD, ADHD, hard time learning things, bad short-term memory, back pain, nerve down [his] leg problems, and insomnia. *See, e.g.*, Docket No. 9, Attachment ("TR"), TR 67, 78. Plaintiff's applications were denied both initially (TR 66, 77) and upon reconsideration (TR 89-90). Plaintiff subsequently requested (TR 166) and received (TR 35-65) a hearing. Plaintiff's hearing was conducted on May 21, 2025, by Administrative Law Judge ("ALJ") Angele Pietrangelo. TR 35. Plaintiff and vocational expert ("VE"), Gary Sturgill, Ph.D., appeared and testified. *Id.*

On June 6, 2025, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14-29. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since December 31, 2020, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; tendonitis of both ankles; depressive disorder; anxiety disorder; and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting for

2

six hours in an eight-hour workday; standing and/or walking for four hours in an eight-hour workday; needing to alternate positions once an hour for ten minutes at a time while remaining on task; never climbing ladders, ropes, or scaffolds; occasional performing of all other postural activities; avoiding concentrated exposure to hazards including unprotected heights and unguarded moving machine parts; performing simple and low-level detailed tasks; maintaining concentration, persistence, and pace for two hours at a time for such tasks only; occasional interaction with the public; frequent interaction with coworkers and supervisors; and adapting to only occasional workplace changes.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 3, 1982, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 19-21, 27-29.

On August 4, 2025, Plaintiff timely filed a request for review of the hearing decision. TR 242-44. On August 12, 2025, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole,

then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.,* 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

**B. Proceedings At The Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. ' 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence

7

from Plaintiff's treating psychiatrist, William Bell, M.D., consistent with SSA authority and Sixth Circuit precedent. Docket No. 13, p. 1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.* at 12-13.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

Plaintiff maintains that "the ALJ failed to explain how the numerous abnormal examination findings in the record were inconsistent with Dr. Bell's opinion." Docket No. 13, p. 9 (footnote omitted). Plaintiff asserts that the evidence establishes only that Plaintiff's mental functioning is variable, and that fact must be considered by the ALJ in order for the ALJ's opinion to be supported by substantial evidence. *Id.* at 10. Plaintiff contends that the ALJ's assertion rests on "highly

8

selective references to the record," and nothing in the ALJ's summary shows that Plaintiff's performance of daily activities is inconsistent with Dr. Bell's opinion. *Id.* at 10-11. Plaintiff maintains that the ALJ is required to accurately describe Plaintiff's activities and that the ability to perform transitory or sporadic daily activities does not equate to the ability to work on a regular and continuous basis. *Id.* at 11. Plaintiff further asserts that the ALJ's conclusion that Dr. Bell's opinion is inconsistent with the record only makes sense if the evidence contrary to his rationale is excluded. *Id.* at 12. Ultimately, Plaintiff states that the ALJ's rejection of Dr. Bell's opinion was based on a selective recitation and reference to the record with no logical bridge between her finding and the evidence. *Id.*

Defendant responds that the ALJ properly considered the medical opinions and prior administrative medical findings. Docket No. 16, p. 5. Defendant asserts that Deborah Doineau, Ed.D.; William Bell, M.D.; and state agency medical consultants determined different levels of limitation for Plaintiff, but it is the function of the ALJ to resolve conflicts among medical opinions and prior administrative medical findings. *Id.* at 5-6. Defendant states that the ALJ found Dr. Doineau's opinion supported by the examination findings and that the limitations were consistent with Plaintiff's treatment records, which showed normal mental status examinations except for abnormal mood findings. *Id.* at 8. Defendant asserts that the ALJ's determination that Plaintiff had moderate limitations in understanding, remembering, and applying information, socially relating, concentrating, persisting, and maintaining pace, and adapting was consistent with Dr. Doineau's opinion. *Id.* Defendant further contends that the ALJ properly considered the prior administrative psychological findings to determine Dr. Schoup's findings persuasive. *Id.* Defendant maintains that the ALJ did not find Dr. Koontz's findings persuasive because they were not well supported

9

by Dr. Bell's records or Dr. Doineau's findings. *Id.* Defendant contends that because of Plaintiff's activities of daily living, the ALJ properly found Plaintiff could occasionally interact with the public and frequently interact with co-workers and supervisors. *Id.* at 9. Defendant further asserts that the ALJ properly evaluated Dr. Bell's opinions using the mandatory factors and found them partially persuasive to the extent that they supported moderate limitations. *Id.* Defendant maintains that the resolution of conflicting evidence is the role of the ALJ, and this determination is within the zone of choice. *Id.* at 11.

Plaintiff replies that the evidence of record repeatedly confirmed abnormal mental findings that persisted despite continued psychiatric treatment with Dr. Bell. Docket No. 17, p. 2. Plaintiff further contends that the ALJ found the medical evidence inconsistent with Dr. Bell's marked and extreme limitations but never explained how the normal findings outweighed the repeated abnormal findings. *Id.* Plaintiff states that the ALJ failed to explain how the repeated abnormal psychiatric findings, as well as the actual extent of his daily activities, are inconsistent with Dr. Bell's marked and extreme limitations. *Id.* at 3.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his application after March 27, 2017. TR 67, 78. As such, Plaintiff's case is governed by the rules that

10

were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2) . . . .*

> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

> > **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

> > **(2) Most important factors.** The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical

11

opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

**(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

12

**(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

**(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

**(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

13

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520c.

Dr. Bell began treating Plaintiff in January 2013. TR 438. On September 5, 2019, and March 24, 2025, Dr. Bell provided treating source statement letters regarding Plaintiff. TR 438-41, 693-96. These letters state as follows:

> Chris has been so extremely depressed for the past few years. Mentally he is exhausted. His ability to mentally adapt to a regular work schedule is markedly impaired as a result. He is extremely distracted and cannot sustain focus well. He is so very mentally preoccupied that his ability to properly reason is poor.
>
> …
>
> Chris has struggled with depression for years. At first severe back pain led to worsening depression. Now his moods/depression is easily triggered/worsened by mild day to day stressors/conflicts/demands/expectations that are routine aspects of any job/vocation. I would expect any job would cause worsening dep/anxiety and interfere with mental/cognitive composure.

TR 441, 696.

When discussing Dr. Bell's letter, the ALJ stated:

> William Bell, M.D., the claimant's treatment provider at Bell Psychiatric, completed an assessment in 2019 in which they assessed some mild to moderate limitations in the claimant's ability to under[*sic*], remember, and carry out very short and simple instructions but marked limitations with detailed instructions, maintaining attention and concentration, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others, interacting with others, accepting instructions and responding appropriately to criticism from supervisors, adapting, and tolerating normal levels of stress and extreme limitations with completing a normal workday and workweek (Exhibit 4F/2-4). Dr. Bell further opined that the claimant's impairments would substantially interfere with their ability to work

14

> on a regular and sustained basis for at least 20% of the time and that the claimant would miss five to 10 days of work per month (Exhibit 4F/4).
>
> In an assessment completed in 2025, Dr. Bell opined similar limitations but found marked limitations in only maintaining attention and concentration, completing a normal workday and workweek, and interacting with the general public (Exhibit 16F/2-4). They again opined that the claimant's impairments would substantially interfere with their ability to work on a regular and sustained basis for at least 20% of the time and that they would miss seven days of work per month (Exhibit 16F/4).
>
> Dr. Bell's medical opinions at Exhibits 4F and 16F are partially persuasive as their assessment of moderate limitations is supported by their treatment records, Dr. Doineau's evaluation findings, and the claimant's reported activities.

TR 27.

Ultimately, the ALJ discounted Dr. Bell's opinion, stating:

> However, such evidence does not support a finding of marked or extreme limitations. The claimant demonstrated impaired memory and concentration at the psychological consultative evaluation, and Dr. Bell noted some abnormal mood findings. However, the claimant is able to manage their self-care, drive, shop, prepare meals, co-parent, and manage their finances, and they reported reading and listening to podcasts. Overall, the evidence does not support a finding of marked or extreme limitations or that the claimant will have excessive work absences or be off task for at least 20% of the day.

*Id.*

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. *20 CFR § 404,1520c(a)*. In discounting Dr. Bell's opinion, the ALJ generally discussed the relevant factors, set forth above. *See 20 CFR § 404.1520c(c)(1) – (c)(5)*. Specifically, the ALJ found that Dr. Bell's opinion was only partially

15

supported by his treatment records or the objective medical evidence, and was inconsistent with Plaintiff's daily activities. TR 27. The ALJ explained:

> Dr. Bell's medical opinions at Exhibits 4F and 16F are partially persuasive as their assessment of moderate limitations is supported by their treatment records, Dr. Doineau's evaluation findings, and the claimant's reported activities. However, such evidence does not support a finding of marked or extreme limitations. The claimant demonstrated impaired memory and concentration at the psychological consultative evaluation, and Dr. Bell noted some abnormal mood findings. However, the claimant is able to manage their self-care, drive, shop, prepare meals, co-parent, and manage their finances, and they reported reading and listening to podcasts. Overall, the evidence does not support a finding of marked or extreme limitations or that the claimant will have excessive work absences or be off task for at least 20% of the day.

TR 27.

Beyond discussing supportability and consistency, the ALJ also considered Dr. Bell's "relationship with the claimant." *20 CFR § 404.1520c(c)(3)*. The ALJ stated that William Bell, M.D., is Plaintiff's treatment provider at Bell Psychiatric and completed assessments in 2019 and 2025. TR 27. The ALJ fulfilled her duty under the new regulations and properly evaluated the opinion of Dr. Bell.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 12) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

16